No. 25-20155

———————————

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

ANTONIO RAMIREZ-RAMIREZ,
                    *Defendant-Appellant.*

———————————

On Appeal from the United States District Court
For the Southern District of Texas
Houston Division, Case No. 4:23-cr-565

———————————

BRIEF OF PLAINTIFF-APPELLEE

———————————

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

KRISTIAN D. AMUNDSEN
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9102

ATTORNEYS FOR APPELLEE

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. The record and briefs adequately present the facts and legal arguments to resolve this appeal; oral argument would not significantly aid the decisional process. Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ....................................ii

TABLE OF AUTHORITIES ......................................................v

STATEMENT OF JURISDICTION ..........................................1

STATEMENT OF THE ISSUES ...............................................1

STATEMENT OF THE CASE ...................................................1

    I.    Course of the Proceeding Below................................1

    II.   Relevant Factual History........................................2

        a.   Trial Evidence ..............................................2

           i.   The Government's Case .......................2

          ii.   Ramirez-Ramirez's Witnesses ..............9

         iii.  Translations ...................................10

         iv.  PSR...............................................11

          v.   Ramirez-Ramirez's Objections and Probation's Response .........................12

         vi.  Sentencing....................................14

SUMMARY OF ARGUMENT ................................................15

ARUGMENT ......................................................................16

    I.    The district court did not commit evidentiary error during Ramirez-Ramirez's trial (Responsive to Appellant's Issues I)..............................................16

# TABLE OF CONTENTS, cont'd

PAGE

    a.   Standard of Review ...................................................... 16

    b.   The Confrontation Clause ............................................ 17

    c.   The translated transcripts were properly admitted into evidence ................................................................. 18

II.   The district court did not procedurally err in calculating Ramirez-Ramirez's sentencing guideline range (Responsive to Appellant's Issues II and III). ..................... 26

    a.   The Standard of Review .............................................. 26

    b.   The district court properly applied the § 2D1.1(b)(1) enhancement. .......................................... 27

    c.   The district court properly applied the § 2D1.1(b)(2) enhancement. .......................................... 31

CONCLUSION ....................................................................... 35

CERTIFICATE OF SERVICE ................................................. 36

CERTIFICATE OF COMPLIANCE ........................................ 37

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011) ................................ 18

*Crawford v. Washington*, 124 S. Ct. (2004) ............................................ 17

*Davis v. Washington*, 126 S. Ct. 2266 (2006) .......................................... 17

*Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009) ...................... 18

*United States v. Ayelotan*, 917 F.3d 394 (5th Cir. 2019) ........................ 19

*United States v. Barrera*, 697 F. App'x 373 (5th Cir. 2017) (unpublished) ............................................................................. 26, 32

*United States v. Betancourt*, 422 F.3d 240 (5th Cir. 2005) ..................... 32

*United States v. Bonilla*, 670 F. App'x 875 (5th Cir. 2016) (unpublished) .................................................................................. 33

*United States v. Bourrage*, 138 F.4th 327 (5th Cir. 2025) ...................... 31

*United States v. Budha*, 495 F. App'x 452 (5th Cir. 2012) (unpublished) .............................................................................. 19, 22

*United States v. Caldwell*, 448 F.3d 287 (5th Cir. 2006) ........................ 26

*United States v. Cantu-Ramirez*, 669 F.3d 619 (5th Cir. 2012) ............. 27

*United States v. Cardona*, 709 F. App'x 275 (5th Cir. 2017) (unpublished) .............................................................................. 26, 27

*United States v. Castro*, No. 24-40621, 2025 WL 3275604 (5th Cir. Nov. 25, 2025) (unpublished) ......................................................... 30

*United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013) ...................... 24

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                   **Page(s)**

*United States v. Chavira-Cruz*, 101 F. App'x 952 (5th Cir. 2004)
(unpublished)............................................................. 18, 20

*United States v. Choulat*, 75 F.4th 489 (5th Cir. 2023).......................... 26

*United States v. Cordero*, 18 F.3d 1248 (5th Cir. 1994) ......................... 19

*United States v. Curbelo*, 726 F.3d 1260 (11th Cir. 2013).......... 21, 23, 24

*United States v. Garansuay*, 845 F. App'x 350 (5th Cir. 2021)
(unpublished)................................................................. 27

*United States v. Gonzalez*, No. 21-40580, 2022 WL 1617857 (5th Cir.
May 23, 2022) (unpublished) ......................................... 32

*United States v. Harris*, 578 F. App'x 451 (5th Cir. 2014)
(unpublished)................................................................. 32

*United States v. Harris*, 829 F. App'x 64 (5th Cir. 2020)
(unpublished)................................................................. 29

*United States v. Hewin*, 877 F.2d 3 (5th Cir.1989)................................ 29

*United States v. Hieng*, 679 F.3d 1131 (9th Cir.2012)............................ 22

*United States v. Jacobs*, 797 F. App'x 873 (5th Cir. 2020)
(unpublished)................................................................. 30

*United States v. Juarez-Duarte*, 513 F.3d 204 (5th Cir. 2008).............. 26

*United States v. King*, 93 F.4th 845 (5th Cir. 2024) ............................. 16

*United States v. King*, 773 F.3d 48 (5th Cir. 2014)................................ 30

# TABLE OF AUTHORITIES, cont'd

**Cases**                                                                **Page(s)**

*United States v. Landry*, 838 F. App'x 899 (5th Cir. 2021)
(unpublished)...............................................................31

*United States v. Lee*, 966 F.3d 310 (5th Cir. 2020)..................................30

*United States v. Lira-Salinas*, 852 F. App'x 860 (5th Cir. 2021)
(unpublished)...............................................................26

*United States v. Marquez*, 685 F.3d 501 (5th Cir. 2012).........................28

*United States v. Martinez-Gaytan*, 213 F.3d 890 (5th Cir. 2000)...........20

*United States v. Mergerson*, 4 F.3d 337 (5th Cir. 1993).......................27

*United States v. Moreno*, 811 F. App'x 219 (5th Cir. 2020)
(unpublished)...............................................................28

*United States v. Naranjo*, No. 21-50726, 2023 WL 314306 (5th Cir.
Jan. 19, 2023) (unpublished)...........................................16

*United States v. Nazemian*, 948 F.2d 522 (9th Cir.1991).......................19

*United States v. Nelson*, 732 F.3d 504 (5th Cir. 2013) ...........................19

*United States v. Oti*, 872 F.3d 678 (5th Cir. 2017) ...............................26

*United States v. Rivera Arreola*, 831 F. App'x 690 (5th Cir. 2020)
(unpublished)...............................................................27

*United States v. Romo-Chavez*, 681 F.3d 955 (9th Cir. 2012) ..........19, 21

*United States v. Salazar-Valencia*, 716 F. App'x 288 (5th Cir. 2018)
(unpublished).........................................................27, 33

*United States v. Sanchez*, 850 F.3d 767 (5th Cir. 2017).........................27

# TABLE OF AUTHORITIES, cont'd

**Cases** **Page(s)**

*United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017) ........................... 17

*United States v. Santiago Rivera*, No. 21-13835, 2022 WL 17175613
(11th Cir. Nov. 23, 2022) (unpublished) ................................. 20, 21

*United States v. Soto-Bazan*, No. 24-40134, 2025 WL 1879870 (5th
Cir. July 8, 2025) (unpublished) ..................................... 31

*United States v. Suarez*, 911 F.2d 1016 (5th Cir. 1990) ........................ 29

*United States v. Torres*, 694 F. App'x 937 (5th Cir. 2017)
(unpublished) .......................................................... 27, 33

*United States v. Villarreal*, 920 F.2d 1218 (5th Cir. 1991) .............. 28, 29

*United States v. Vital*, 68 F.3d 114 (5th Cir. 1995) ................................ 29

## Statutes and Rules

18 U.S.C. § 3231 ....................................................................... 1

18 U.S.C. § 3553(a) ................................................................. 15

18 U.S.C. § 3742 ....................................................................... 1

28 U.S.C. § 1291 ....................................................................... 1

Fed. R. App. P. 34(a)(2)(C) ...................................................... ii

5th Cir. R. 28.2.2 ....................................................................... 1

## United States Sentencing Guidelines

U.S.S.G. § 1B1.3(a)(1)(A)........................................................ 32

<u>**TABLE OF AUTHORITIES, cont'd**</u>

**United States Sentencing Guidelines**                    **Page(s)**

U.S.S.G. § 1B1.3(a)(1)(B).............................................................. 32

U.S.S.G. § 1B1.3(c) ...................................................................... 34

## STATEMENT OF JURISDICTION

Antonio Ramirez-Ramirez appeals from the judgment imposed by the district court (Hittner, J.) and entered on April 22, 2025. ROA.412.[1] The district court had jurisdiction under 18 U.S.C. § 3231. Ramirez-Ramirez timely filed a notice of appeal. ROA.416-17. This Court's jurisdiction vests under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I) Whether the district court reversibly erred by admitting translations of recorded conversations into evidence without testimony from the translator? (Responsive to Appellant's Issue I)

II) Whether the district court procedurally erred in calculating Ramirez-Ramirez's guideline range? (Responsive to Appellant's Issues II and III)

## STATEMENT OF THE CASE

### I.    Course of the Proceeding Below

The Grand Jury for the Southern District of Texas charged Ramirez-Ramirez with conspiracy to possess with intent to distribute a controlled substance (more than five kilograms of cocaine), aiding and abetting the possession of a controlled substance with intent to

---

[1] "ROA" refers to the record on appeal, which is cited in accordance with 5th Cir. R. 28.2.2. "PSR" refers to the presentence investigation report filed on December 20, 2024, with all addenda, which is cited by paragraph number(s) when appropriate. Citations to Appellant's Brief cite the page number in the ECF heading.

distribute, forcibly assaulting a federal officer, unlawful possession of a firearm as an alien, and possession of a firearm in furtherance of a crime of violence. ROA.72-76. A codefendant, Pedro Barajas-Lazo, was charged in Counts One and Two. ROA.72-73.

Following a seven-day jury trial, Ramirez-Ramirez was convicted of conspiracy to possess with intent to distribute a controlled substance and unlawful possession of a weapon (Counts I and IV). ROA.389, 392, 411. The jury acquitted Ramirez-Ramirez of the other counts. ROA.390-91, 393. The district court adopted the presentence investigation report (PSR), with one minor notation, and sentenced Ramirez-Ramirez within his guideline range to an aggregate term of 216 months' incarceration and five years' supervised release. ROA.412-13, 2036.

## II.    Relevant Factual History

### a.    Trial Evidence

#### i.    The Government's Case

A confidential informant (CI) met Ramirez-Ramirez around 2016. ROA.1855. The CI interacted with Ramirez-Ramriez on multiple

occasions. ROA.1858.[2] Ramirez-Ramirez operated a restaurant, named Comala. ROA.1012, 1051, 1858.

In March 2023, the CI attempted to reconnect with a man involved in drug distribution, named Popo, at Ramirez-Ramirez's restaurant. ROA.1859, 1866, *see also* ROA.1145. Popo had previously supplied the CI with cocaine to sell. ROA.844-45, 1859. By March 2023, the CI was working with the Drug Enforcement Agency (DEA). ROA.1860.[3]

Once at the restaurant, the CI encountered Ramirez-Ramirez. ROA.856, 1866, 1936, *see also* ROA.2262.[4] Ramirez-Ramirez told the CI Popo had passed away. ROA.855, 1866, 1938. The CI explained he was looking for Popo because he needed cocaine. ROA.1866-67. Ramirez-Ramirez responded he could get the cocaine for the CI. ROA.1866-67. Ramirez-Ramirez would contact his brother, and his brother would reach back out to the CI to set up a meeting with a cocaine supplier. ROA.857,

---

[2] The CI identified Ramirez-Ramirez in open court. ROA.1859.

[3] The CI previously owned a club in Houston and used the club to meet drug dealers. ROA.1909, 1911-12. He was arrested as part of a DEA investigation. ROA.846, 1860. The CI had pled guilty to conspiracy to distribute cocaine for conduct discovered during that investigation. ROA.1863-63. The CI was awaiting sentencing in that case, had testified against coconspirators in that case, and served as an informant for unrelated drug crimes. ROA.847, 849-53, 1022, 1860-61, 1864, 1924, 1931.

[4] This first conversation with Ramirez-Ramirez was not recorded. ROA.1867, 1936, *see also* ROA.1146.

1868, 1937-38. Ramirez-Ramirez's brother could then give the CI cocaine. ROA.1946, *see also* ROA.1146. Ramirez-Ramirez would receive money for his involvement in the exchange. ROA.1169. The CI gave Ramirez-Ramirez his phone number. ROA.1869-70, 1946.

Following that meeting, the CI spoke with Ramirez-Ramirez twice on the phone. ROA.1870-73, 2164-67, 2169-71. In the first call, Ramirez-Ramirez indicated his brother wanted to speak with the CI at Ramirez-Ramirez's restaurant. ROA.2166-67. His brother knew someone who "does do a lot of that." ROA.2166, *see also* ROA.1871, 1945. In the second phone call, Ramirez-Ramirez informed the CI that he gave the CI's phone number to his brother, and his brother intended to call the CI. ROA.2170. He assured the CI that his brother was trustworthy. ROA.1873, 1949, 2170. Ramirez-Ramirez also stated his brother previously worked with a man named Ovidio. ROA.2171. The CI was aware Ovidio used to supply Popo with cocaine. ROA.1873.

Two days later, Ramirez-Ramirez's brother called the CI to set up a meeting near the restaurant. ROA.1876, 2173-75. The CI met Ramirez-Ramirez's brother in a parking lot outside a clothing store, a location picked by the brother. ROA.1879-80. The two agreed to exchange 15

kilograms of cocaine for cash. ROA.1875, 1881, *see also* ROA.1147-48. The two also planned to meet a few days before the exchange so the CI could inspect some of the cocaine. ROA.1881.

In May 2023, the CI again met with Ramirez-Ramirez's brother. ROA.1882. While inside of the CI's vehicle, Ramirez-Ramirez's brother provided the CI with one kilogram of cocaine to inspect. ROA.866, 1883-84, 2234. Ramirez-Ramirez's brother wanted the CI to take the cocaine, but the CI refused because he did not have money for it and wanted 15 kilograms (not one kilogram). ROA.1884-85, 2178-79, *see also* ROA.866. At the next meeting, Ramirez-Ramirez's brother would bring all the cocaine. ROA.1886.

The following day, Ramirez-Ramirez sent his brother a text message with the phrase "dandy y dando." ROA.2237, *see also* ROA.1006-07. The CI testified 'dando y dando' is a phrase that literally means give and give; the phrase is used by drug traffickers to mean exchange drugs for money. ROA.1143-44, 1903-04.

The CI and Ramirez-Ramirez's brother met again two days later for the full exchange. ROA.1886, 1892, 1900, *see also* ROA.2222. Ramirez-Ramirez's brother wanted the exchange to occur at the restaurant, but

the CI did not. ROA.1876, 1892-93, 2184. The CI stated his customers for the cocaine would not be comfortable exchanging the money at the restaurant. ROA.1876-77, 2185-86, 2188-91, 2198.[5] The CI had previously indicated the sensitive nature of the exchange, and told Ramirez-Ramirez to keep the transaction between the supplier, "your brother[,] me and you[,]" as well as the purchasers. ROA.1895, 2193. After the exchange, the CI could meet up with Ramirez-Ramirez and his brother. ROA.1897, 2210.

Ramirez-Ramirez's brother and his supplier, Barajas-Lazo, brought the cocaine to a Walmart parking lot to meet with the CI. ROA.868, 1887, 1892, 1900, *see also* ROA.2200, 2203, 2206. The two arrived in a black Nissan Frontier. ROA.1901. The plan was for Barajas-Lazo to follow the CI to a second location five to ten minutes away to meet the buyers. ROA.1887-88, 1900-01. The CI, in his own vehicle, and the other two, in the Frontier, then left the parking lot. ROA.1901.

---

[5] The CI knew, however, that there would no actual exchange because of the DEA involvement. ROA.1878.

A Houston police officer conducted a traffic stop of the Frontier. ROA.803-06, *see also* 2236 (Gov't Ex. 11).[6] The truck did not initially stop after the officer turned on his lights, and once it did, the officer found that the driver did not have a license. ROA.804-06, 809. The officer observed the box on the back seat that was believed to contain cocaine. ROA.803, 807, 809-10, 812. A drug sniffing canine alerted to the vehicle. ROA.809. Thereafter, the Frontier was moved to a parking lot for a search. ROA.810. A police officer removed the box from the backseat. ROA.821. The box contained bundles of cocaine weighing over 17 kilograms. ROA.811, 817, 822, 834, 838, 1000, 2239-42.

The driver of the truck was Barjas-Lazo. ROA.828. Ramirez-Ramirez's brother was a passenger in the truck. ROA.820-21. Ramirez-Ramirez's brother spoke with a police officer and stated he was working at the direction of a "Mexican-Based organization." ROA.828-29, 1049. Barjas-Lazo was later arrested and deported. ROA.1004-05. Ramirez-Ramirez's brother was also arrested and charged with drug trafficking offenses. ROA.1112.

---

[6] Meanwhile, the CI proceeded to a safe location and waited for further instructions from his DEA handler. ROA.1901-02.

Afterwards, the CI informed Ramirez-Ramirez that his brother's vehicle had been stopped. ROA.2227. According to the CI, Ramirez-Ramirez stated Ramirez-Ramirez felt guilty because he was "the one that set it up." ROA.1162, 2228. On cross examination, the CI explained Ramirez-Ramirez had said Ramirez-Ramirez was the one who introduced them (the CI and his brother). ROA.1163. The CI interpreted that to mean Ramirez-Ramirez was the one who had set it up. ROA.1163. The CI acknowledged Ramirez-Ramirez did not literally say "I set it up." ROA.1164-66.

The CI and Ramirez-Ramirez spoke on the phone a second time about his brother's location. ROA.1908, 2230-33. Later, Ramirez-Ramirez claimed in a text to the CI that he was just trying to do the CI a favor and implied he does not normally traffic drugs. ROA.1168.

Law enforcement executed an arrest warrant at Ramirez-Ramirez's home nine months later. ROA.1052, 1189, 1381. During the execution of the warrant, Ramirez-Ramirez approached police officers, took an aggressive stance, and racked a silver firearm. ROA.1203-04, 1210-11, 1212, 1258-60, 1303-04, 1387-89, 1444, 1448-49. Law enforcement then shot Ramirez-Ramirez. ROA.1205-06, 1245, 1250, 1390, 1451, 1467.

Law enforcement subsequently searched the home and discovered $50,000 wrapped in plastic in the master bedroom. ROA.1019-21, 1330-31, 2259. These bundles of cash are common for drug traffickers. ROA.1127. Law enforcement also found a shotgun and semi-automatic pistol in the home. ROA.1019.

Immigration documents indicated Ramirez-Ramirez was in the country without lawful status. ROA.1376-77.

### ii.     Ramirez-Ramirez's Witnesses

At trial, Ramirez-Ramirez presented four character witnesses. ROA.1494, 1499, 1503, 1507. His wife also testified regarding his business, the day of his arrest, and his immigration status. ROA.1511-40.

Ramon Delvillar, a former court interpreter, was certified as a translation expert. ROA.1577-78, 1581. Regarding Ramirez-Ramirez's text message with his brother, Mr. Delvillar explained "dando y dando" is a common phrase which can mean the exchange of money for a service. ROA.1184-85. Regarding Ramirez-Ramirez's phone call with the CI after his brother's arrest, it is possible Ramirez-Ramirez said "I was the one who put." ROA.1589. Mr. Delvillar was not sure what was said after

"put." ROA.1590. Ramirez-Ramirez could have said he was the one who put the CI and his brother in touch with each other. ROA.1590. On cross examination, Mr. Delvillar stated that, in context, Ramirez-Ramirez meant he put the CI in contact with his brother. ROA.1592.

### iii.    Translations

During trial, the government introduced recordings of conversations between the CI and Ramirez-Ramirez, as well as recordings between the CI and Ramirez-Ramirez's brother, in Spanish. ROA.1008-09, 1870. The translations were produced by a linguist, contracted by the DEA, who did not testify at trial. ROA.1009.

Nevertheless, the CI reviewed the recordings and English translations of those recordings in anticipation of trial and testified the translations were, based on his understanding, accurate accounts of the recordings. ROA.1871, *see also* ROA.1139.[7] The CI testified he was fluent in Spanish, having been born in the Dominican Republic. ROA.1870, 1910. As such, the CI spoke fluent Spanish from a very young age. ROA.1870-71.

---

[7] During the CI's testimony, he also reaffirmed individually that certain transcripts were accurate. ROA.1872, 1879, 1883, 1897, 1899, 1908.

Ramirez-Ramirez objected to the translations, claiming they could only be introduced if the translator who drafted them testified. ROA.288-89, 608-611, 1009-10. The district court overruled the objection. ROA.611, 1010. Later, the district court instructed the jury that, if it determined the transcripts were inaccurate or untruthful considering the testimony, it should disregard them. ROA.1685.

### iv.    PSR

Prior to sentencing, Probation generated a PSR. ROA.2017-33. Ramirez-Ramirez's base offense level was 32 because he was accountable for more than 15 kilograms (17.02 kilos) of cocaine. ROA.2024-25 (PSR ¶ 29). Probation increased that by two levels pursuant to U.S.S.G. § 2D1.1(b)(1), because a firearm was possessed in connection with the offense, and by another two levels pursuant to U.S.S.G. § 2D1.1(b)(2), because Ramirez-Ramirez made a credible threat to use violence. ROA.2025 (PSR ¶¶ 30-31). Thus, Probation determined Ramirez-Ramirez's total offense level was 36. ROA.2025 (PSR ¶ 38).

Ramirez-Ramirez had no other criminal convictions or adjudications. ROA.2025 (PSR ¶¶ 39-40). As such, his criminal history

score was zero and his corresponding criminal history category was I. ROA.2025 (PSR ¶ 41).

With a total offense level of 36 and a criminal history category of I, Probation determined Ramirez-Ramirez's sentencing guideline range was 188 to 235 months' incarceration. ROA.2029 (PSR ¶ 64).

### v.     Ramirez-Ramirez's     Objections     and     Probation's Response

Ramirez-Ramirez filed written objections to the PSR. ROA.2005-16. In pertinent part, he challenged both two-level enhancements. ROA.2010-14.[8]

Regarding § 2D1.1(b)(1), he posited the "drug conspiracy … culminated in the May 2023, 17.02-kilogram[,] transaction…" ROA.2012. Ramirez-Ramirez argued he "was not involved in the negotiations for that transaction, nor was he present at their meeting on May 15, 2023." ROA.2012. The firearms were recovered when the "agents executed the search warrant of [his] residence in February 2024" and "no drugs were found" during the search. ROA.2012. He concluded the government had not shown "a temporal and spatial relation between the weapon, the drug

---

[8] Ramirez-Ramirez also contested his base offense level and the lack of a mitigating role adjustment. ROA.2006-10, 2014-15, 2034-35. Neither are germane to his appeal. *See* Appellant Br., p. 10, 18, 30-37.

activity, and [Ramirez-Ramirez]" and it was "clearly improbable that [Ramirez-Ramirez's] weapon was connected with the offense." ROA.2012 (cleaned up).

As to § 2D1.1(b)(2), Ramirez-Ramirez noted he "was charged with assault on a federal agent with a firearm based on events that occurred when agents executed [an arrest] warrant…at his residence" but "the jury found [him] not guilty" of the offense. ROA.2013. Therefore, he argued the § 2D1.1(b)(2) should not be applied because it is based upon acquitted conduct. ROA.2013-14.

In response to Ramirez-Ramirez's first pertinent objection, Probation explained the firearm was possessed in connection with the offense because agents found "$52,728 of cash wrapped in plastic bundles in [Ramirez-Ramirez's] home along with multiple firearms." ROA.2035, *see also* ROA.2023 (PSR ¶ 19). That cash "is presumed to be proceeds of the drug trafficking activity…[and] is subject to forfeiture as it is alleged to be drug proceeds." ROA.2035, *see also* ROA.2023 (PSR ¶ 21).

To counter Ramirez-Ramirez's second pertinent objection, Probation explained "relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court,

unless such conduct establishes, in whole or in part, the instant offense of conviction." ROA.2035 (emphasis removed). Ramirez-Ramirez was convicted of being an alien in possession of a firearm arising from his conduct during the execution of the arrest warrant. ROA.2035. At that time, Ramirez-Ramirez "brandished the firearm and stated, 'I'll show you my hands, I got something for you' which is considered a credible threat to use violence." ROA.2035.

### vi.    Sentencing

The district court began the sentencing hearing by ruling on Ramirez-Ramirez's objections. ROA.1826-28. In response to the Probation's written response to Ramirez-Ramirez's § 2D1.1(b)(2) objection, defense counsel highlighted that the "video evidence was 'Hands up. I got it,' not 'I'll show you my hands. I've got something for you.'" ROA.1828. The district court stated it would note the clarification. ROA.1828, *see also* ROA.2036. With that, the district court overruled the objections and adopted the PSR. ROA.1828.

Defense counsel requested a mandatory minimum sentence, 120 months' incarceration. ROA.1835-37. Ramirez-Ramirez spoke on his own behalf, expressing remorse for his conduct. ROA.1837-39.

The prosecutor explained Ramirez-Ramirez put his family in danger by making "the decision to come to the door with a gun" and "racking it with a house full of people." ROA.1839. Additionally, he had "firearms and the $52,000…in the house at that time" providing "ample evidence of drug trafficking [] with firearms." ROA.1839. The prosecutor recommended a sentence at the high end of the guideline range. ROA.1839-40.

The district court stated it believed a within guideline sentence was appropriate, considering the 18 U.S.C. § 3553(a) factors. ROA.1840. The district court sentenced Ramirez-Ramirez to 216 months' incarceration for conspiracy with intent to distribute cocaine to run concurrently with a term of 180 months' incarceration for alien in possession of a firearm to be followed by an aggregate term of five years' supervised released. ROA.1840, 1843-44.

## SUMMARY OF ARGUMENT

The district court did not reversibly err by admitting translations of recorded phone conversations into evidence. The CI, a party to the conversations, testified as to their accuracy. Moreover, Ramirez-Ramirez has not established reasons to doubt the accuracy of the translation. And

the translator's testimony was not required under this Court's precedent related to translations. Finally, any error in admitting the evidence was harmless.

The district court did not procedurally err in calculating Ramirez-Ramirez's guideline range. The two-level enhancement pursuant to § 2D1.1(b)(1) was properly applied because Ramirez-Ramirez possessed firearms in his house near alleged drug proceeds. This supports an inference that the firearms were possessed to protect those proceeds. The two-level enhancement pursuant to § 2D1.1(b)(2) was properly applied because there was a connection between Ramirez-Ramirez's drug trafficking activity and his firearm possession. As such, his conduct with the firearm helps establish, in part, the conspiracy conviction.

## **ARUGMENT**

### I.    **The district court did not commit evidentiary error during Ramirez-Ramirez's trial (Responsive to Appellant's Issues I).**

#### a.    **Standard of Review**

This Court reviews preserved Confrontation Clause claims *de novo* and will only reverse if an error is harmless beyond a reasonable doubt. *United States v. King*, 93 F.4th 845 (5th Cir. 2024); *United States v.*

*Naranjo*, No. 21-50726, 2023 WL 314306, at *3 (5th Cir. Jan. 19, 2023) (unpublished). Evidentiary rulings preserved at trial are reviewed for abuse of discretion, subject to harmless error analysis. *Id.* (citing *United States v. Sanjar*, 876 F.3d 725, 738 (5th Cir. 2017)).

### b.    The Confrontation Clause

The Supreme Court has held the right to confrontation prohibits a witness's out-of-court testimonial statements, unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 124 S. Ct. at 1365, 1374 (2004); *see Davis v. Washington*, 126 S. Ct. 2266, 2273-76 (2006). A critical portion of the *Crawford* holding was the phrase "testimonial statements." *Davis,* 126 S. Ct. at 2273.  "Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Id*. Testimony "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 124 S. Ct. at 1364 (brackets original). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis*, 126 S. Ct. at 2273.

Subsequently, in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531-32 (2009), the Supreme Court held sworn "certificates of analysis" that reported the type and amount of drugs seized were testimonial statements for purposes of the Confrontation Clause. The analysts' affidavits were testimonial statements and the analysts were "witnesses" for purpose of the Sixth Amendment. *Id.* at 2532. Absent a showing the analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them, he was entitled to be confronted with the analysts at trial. *See id.* at 2532; *see also Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2717-19 (2011) (under *Melendez-Diaz*, an analyst's certification prepared in connection with a criminal investigation or prosecution is testimonial and within the compass of the Confrontation Clause).

### c. The translated transcripts were properly admitted into evidence.

As a threshold matter, Ramirez-Ramirez's recorded statements, as well as his brother's statements, are nonhearsay and admissible. His own statements were "not hearsay because [they were] admissible as a party admission pursuant to Fed. R. Evid. 801(d)(2)." *United States v. Chavira-Cruz*, 101 F. App'x 952, 953 (5th Cir. 2004). Regarding his brother's

statements, "[u]nder Federal Rule of Evidence 801(d)(2)(E), an opposing party's statement is not considered hearsay if it was made by the party's coconspirator during and in furtherance of the conspiracy." *United States v. Nelson*, 732 F.3d 504, 515 (5th Cir. 2013) (internal quotations omitted). The statements on the recordings in furtherance of the conspiracy also do not violate the Confrontation Clause because "coconspirator statements made during the course and in furtherance of a conspiracy aren't testimonial." *United States v. Ayelotan*, 917 F.3d 394, 403 (5th Cir. 2019). Thus, the statements "were admissible if" they "should be considered the statements" of Ramirez-Ramirez and his brother. *See United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012) (citing *United States v. Nazemian,* 948 F.2d 522, 527 (9th Cir.1991) and quotations omitted).

This Court has explained that "except in unusual circumstances, interpreters may be considered language conduits, whose translations of the defendant's own statements are not hearsay and do not implicate defendant's confrontation rights." *United States v. Budha*, 495 F. App'x 452, 454 (5th Cir. 2012) (unpublished); *United States v. Cordero*, 18 F.3d 1248 (5th Cir. 1994) (adopting the rule from *Nazemian,* 948 F.2d at 522);

*see also Chavira-Cruz*, 101 F. App'x at 953 ("The district court did not [abuse] its discretion in admitting the English translation of the statement as a translation does not create an additional level of hearsay.").

This Court has carved out a narrow exception that is applied where the particular facts of a case cast significant doubt upon the accuracy of a translation. *See United States v. Martinez-Gaytan*, 213 F.3d 890, 892-93 (5th Cir. 2000). Otherwise, "if a defendant does not take issue with the accuracy of a translation, as reported by one who heard the translation, during the course of the translated conversation or subsequent events, a hearsay problem rarely arises." *Id.* at 892.

The district court did not err in admitting the translations. While the government did not produce the translator, it did solicit testimony from the CI as to the accuracy of the transcripts. ROA.1870-71, *see also* ROA.1163-66. The CI spoke Spanish fluently, having been born in the Dominican Republic and speaking that language from an early age. Importantly, the CI was "a party on the recordings." *See United States v. Santiago Rivera*, No. 21-13835, 2022 WL 17175613, at *2 (11th Cir. Nov. 23, 2022) (unpublished). Thus, he was "in an excellent position to

authenticate the transcripts." *United States v. Curbelo*, 726 F.3d 1260, 1271 (11th Cir. 2013). The CI testified "he had listened to the calls and reviewed the transcripts, and the English translations were substantially accurate." *See Santiago Rivera*, 2022 WL 17175613 at *2. And he was "cross-examined" as to their veracity. *See id.* Thus, there was no need to call the translator as a witness.

While the CI's testimony should be sufficient to admit the translations, those translations were also admissible without the translator's testimony because the translator acted as a language conduit for Ramirez-Ramirez and his brother. Although the government procured the interpreter, that fact is not dispositive. *See Romo-Chavez*, 681 F.3d at 959-60. There is no evidence the translator was dishonest, harbored bias, or was motivated to mislead or distort the facts.

Most importantly, Ramirez-Ramirez has not identified any gross inaccuracies in the translations. Specifically, he claims the translated statement by Ramirez-Ramirez that he "set it up" was not true. Appellant's Br., p. 24-26. Instead, Ramirez-Ramirez stated he "put" something together. Appellant's Br., p. 24-26. Setting up a cocaine sale is functionally the same as putting two people together for the purposes of

a cocaine sale. This is especially true here because Ramirez-Ramirez was to be paid for his involvement. ROA.1169. In that context, the CI understood Ramirez-Ramirez to be saying Ramirez-Ramirez had set up the transactions by stating he introduced the CI and his brother for the sale. ROA.1163. And Ramirez-Ramirez's own expert testified that, in context, Ramirez-Ramirez could have meant he put the CI in contact with his brother. ROA.1592. Therefore, the translator was a mere language conduit and did not create an additional level of hearsay. Accordingly, the translations were admissible and do not implicate Ramirez-Ramirez's confrontation rights. *See Budha*, 495 F. App'x at 454.

Ramirez-Ramirez argues this Court's precedent related to language conduits has been abrogated by *Melendez-Diaz* and *Bullcoming*. Appellant's Br., p. 21-24. This Court has already held those cases "not in conflict with" this Court's precedent related to language conduits. *Budha*, 495 F. App'x at 454 (citing *United States v. Hieng,* 679 F.3d 1131, 1138-41 (9th Cir.2012)). Those cases "do not address the question whether, when a speaker makes a statement through an interpreter, the Sixth Amendment requires the court to attribute the statement to the interpreter." *Hieng*, 679 F.3d at 1140. Moreover, if a court determines a

statement may be fairly attributed directly to the original speaker, then the court would engage in the *Crawford* analysis only with respect to that original speaker. *See id.* Where the "speaker is the defendant, the Sixth Amendment simply has no application because a defendant cannot complain that he was denied the opportunity to confront himself." *Id.*

Even if *Crawford* and its progeny abrogated this Court's jurisprudence related to language conduits, the translations in the instant case were still admissible absent testimony from the translator. Indeed, the translations do not contain any express assertions from the translator that could be construed as a testimonial hearsay statements. *See Curbelo*, 726 F.3d at 1271 ("If the translator had, for example, certified that the above English-language transcript is a true and accurate translation of the conversations…we would be faced with an obvious testimonial statement. But here the transcripts contained no certification."). Instead, the government relied on the CI to establish the accuracy of the transcripts. ROA.1870-71.

Even if the translations included the translator's "implicit statement that the translation was accurate[,]" that statement was not before the jury. *See Curbelo*, 726 F.3d at 1272 (emphasis removed).

23

Instead, the CI, "a participant in the conversations[,] testified" about the accuracy of the transcripts "based on his independent review of the recordings and transcripts." *See id.* at 1274. Thus, "the only testimony introduced to support the transcripts was introduced live" from the CI. *See id.* at 1275 (cleaned up). Ramirez-Ramirez was, therefore, able to "vigorously cross-examin[e] [the CI] regarding his language expertise, his biases, and the translation's accuracy." *See id.*

Ramirez-Ramirez cites *United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013), in support of his claim that witness testimony from the translator was necessary to admit the transcripts. Appellant's Br., p. 23. However, in *Charles*, a "Customs and Border Protection (CBP) officer interviewed the defendant with the assistance of an … interpreter" and testified as "to what the defendant said in the interview, though the officer was really testifying to what the interpreter said." *Curbelo*, 726 F.3d at 1276. While that CBP officer "testified to out-of-court statements made by the interpreter[,]" the CI at Ramirez-Ramirez's trial "never even mentioned the anonymous translator" and "testified regarding his own assessment that the transcripts were accurate translations." *See id.* at 1276. Thus, *Charles* does not support Ramirez-Ramirez's current claim.

24

Regardless, any error in admitting the translations was harmless beyond a reasonable doubt. The jury was able to consider the veracity of the translations and weigh that evidence since the CI was vigorously cross-examined regarding the translations. And Ramirez-Ramirez was able to present his own translation expert. The district court also instructed the jury to disregard the translations if the jury found them unreliable. Moreover, the CI's testimony about Ramirez-Ramirez's participation was the primary evidence for the conviction. Indeed, the first meeting between Ramirez-Ramirez and CI, where the two discussed the exchange and Ramirez-Ramirez's payment, was not recorded. Ramirez-Ramirez later possessed plastic wrapped cash in his home, which is consistent with drug trafficking. And the translations do not directly bear upon Ramirez-Ramirez's conviction for unlawful possession of a firearm. Taken together, any error in admitting the translation was harmless beyond a reasonable doubt.

**II.    The district court did not procedurally err in calculating Ramirez-Ramirez's sentencing guideline range (Responsive to Appellant's Issues II and III).**

### a.    The Standard of Review

This Court reviews "the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Cardona*, 709 F. App'x 275, 279 (5th Cir. 2017) (unpublished) (citing *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008)). This Court will "also review for clear error the district court's reasonable inferences from the facts." *See United States v. Barrera*, 697 F. App'x 373, 374 (5th Cir. 2017) (unpublished) (citing *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006)). "A finding is clearly erroneous only if, based on the entirety of the evidence, this [C]ourt is left with the definite and firm conviction that a mistake has been committed." *United States v. Lira-Salinas*, 852 F. App'x 860, 861 (5th Cir. 2021) (unpublished) (quotations removed) (citing *United States v. Oti*, 872 F.3d 678, 699 (5th Cir. 2017)). Even if "the facts are susceptible to different inferences" that does not establish clear error. *See United States v. Choulat*, 75 F.4th 489, 492-93 (5th Cir. 2023).

"Factual findings at sentencing need only be determined by a preponderance of the evidence." *United States v. Cardona*, 709 F. App'x 275, 279 (5th Cir. 2017) (unpublished) (citing *United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993)). "'District courts enjoy wide discretion in determining which evidence to consider and to credit for sentencing purposes.'" *United States v. Salazar-Valencia*, 716 F. App'x 288, 292 (5th Cir. 2018) (unpublished) (quoting *United States v. Cantu-Ramirez*, 669 F.3d 619, 628 (5th Cir. 2012)). "Information in the PSR is 'presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable.'" *United States v. Torres*, 694 F. App'x 937, 942 (5th Cir. 2017) (unpublished) (quoting *United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir. 2017) and affirming application of § 2D1.1(b)(2)); *see also United States v. Garansuay*, 845 F. App'x 350, 352 (5th Cir. 2021) (unpublished) (affirming application of § 2D1.1(b)(1)).

### b. The district court properly applied the § 2D1.1(b)(1) enhancement.

"[F]irearms are tools of the trade for people involved in illegal narcotics activity." *United States v. Rivera Arreola*, 831 F. App'x 690, 691

(5th Cir. 2020) (unpublished) (cleaned up). "[W]eapon possession by drug traffickers increases the danger of violence" and an "increased term of imprisonment [] more accurately reflects the defendant's culpability when he chooses to introduce this element of danger into his drug offense." *United States v. Villarreal*, 920 F.2d 1218, 1221 (5th Cir. 1991).

"To prove a dangerous weapon was possessed in the course of a drug-trafficking offense, the Government must demonstrate by a preponderance of the evidence that a temporal and spatial relation existed among the weapon, the drug-trafficking activity, and the defendant." *United States v. Moreno*, 811 F. App'x 219, 223 (5th Cir. 2020) (unpublished) (cleaned up). The enhancement generally applies where "the weapon was found in the same location where the drugs or drug paraphernalia were stored." *Id.* (cleaned up). Application of the enhancement "is essentially a factual determination reviewable under the clearly erroneous standard." *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (cleaned up). The "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Moreno*, 811 F. App'x at 223 (cleaned up).

The firearm need not "play an integral role in the offense…" *United States v. Harris*, 829 F. App'x 64, 65 (5th Cir. 2020) (unpublished) (quoting *Villarreal*, 920 F.2d at 1221). Indeed, the enhancement "is not limited to those scenarios in which the defendant possesses a dangerous weapon during the offense of conviction" but also "when the defendant possesses a dangerous weapon during the course of related relevant conduct." *United States v. Vital*, 68 F.3d 114, 119 (5th Cir. 1995) (internal citations omitted). "Although the weapon and the crime must be connected temporally and spatially, they need not be connected functionally." *United States v. Suarez*, 911 F.2d 1016, 1019 (5th Cir. 1990) (citing *United States v. Hewin,* 877 F.2d 3, 5 (5th Cir.1989)). And a defendant's "arrest" as well as "the circumstances surrounding that arrest" constitute "relevant conduct for sentencing purposes." *Vital*, 68 F.3d at 119.

Here, Ramirez-Ramirez kept firearms inside his residence where he also possessed cash wrapped in plastic in a manner consistent with drug traffickers. ROA.2035, *see also* ROA.1127, 2023 (PSR ¶¶ 19, 21). The "proximity of a weapon to drug proceeds provides a sufficient nexus to conclude that it was not clearly improbable that the gun was connected

with the offense." *United States v. Castro*, --- F.4th ----, No. 24-40621, 2025 WL 3275604, at *3 (5th Cir. Nov. 25, 2025) (rejecting Castro's argument that the enhancement could not apply because "no drugs were found in the apartment, no drug paraphernalia was recovered in the apartment, and no drug buys or transactions were ever observed at the apartment" (cleaned up)).

That the firearms were found in the same house as alleged drug proceeds "supports an inference that" the firearms were used "for defending a location involved in a drug conspiracy." *See United States v. King*, 773 F.3d 48, 54 (5th Cir. 2014). Put another way, it is not implausible that Ramirez-Ramirez kept the firearm "to protect his scheme's proceeds." *See United States v. Lee*, 966 F.3d 310, 329 (5th Cir. 2020). As such, the district court properly applied the enhancement. *See Castro*, 2025 WL 3275604 at *3; *United States v. Jacobs*, 797 F. App'x 873, 874 (5th Cir. 2020) (unpublished) (affirming application of the enhancement where the government showed "that Jacobs kept the firearm along with more than $7,000 in cash in a residence a DEA agent testified was" associated with Jacobs' trafficking activities).

Ramirez-Ramirez argues the government failed to establish a temporal nexus between the drugs and the firearms, because he possessed the firearms nine months after the conspiracy's supposed end. Appellant Br., p. 35-36. For purposes of this enhancement, this Court has explained it is "well settled" that conduct occurring "within one year of the offense of conviction may be considered relevant conduct for sentencing." *United States v. Bourrage*, 138 F.4th 327, 356 (5th Cir. 2025) (noting that a four-month gap is "is far shorter than the year-long gap that we have also deemed acceptable"). Nor has Ramirez-Ramirez proven "it was clearly improbable that the weapon was connected with the offense." *See United States v. Landry*, 838 F. App'x 899, 900 (5th Cir. 2021) (unpublished) (cleaned up); *United States v. Soto-Bazan*, No. 24-40134, 2025 WL 1879870, at *1 (5th Cir. July 8, 2025) (unpublished) (affirming application of the enhancement where the defendant claimed he "procured the gun for protection due to burglaries and left the conspiracy two months before the gun was recovered").

### c.    The district court properly applied the § 2D1.1(b)(2) enhancement.

Section 2D1.1(b)(2) states if "the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by

2 levels." A threat of violence is credible when it is "'believable.'" *United States v. Harris*, 578 F. App'x 451, 453 (5th Cir. 2014) (unpublished) (quoting Black's Law Dictionary 448 (10th Ed. 2014)).

This Court reviews "for clear error" the district court's factual finding that Ramirez-Ramirez "made credible threats of violence." *See United States v. Barrera*, 697 F. App'x 373, 374 (5th Cir. 2017) (unpublished) (citing *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005)). A defendant's actions during the execution of the arrest warrant at this home are "relevant conduct and provide a basis for imposition of the threat enhancement." *See United States v. Gonzalez*, No. 21-40580, 2022 WL 1617857, at *1 (5th Cir. May 23, 2022) (unpublished) (citing U.S.S.G. § 1B1.3(a)(1)(A), (B)[9]).

Here, trial testimony from law enforcement and the video evidence demonstrate Ramirez-Ramirez racked a loaded firearm while approaching officers attempting to execute an arrest warrant. ROA.2022 (PSR ¶ 18), 2035, *see also* ROA.1828, 2036. At trial, one law enforcement officer testified Ramrirez-Ramirez's actions caused him to fear for his and

---

[9] Section 1B1.3(a)(1)(B) explains that relevant conduct includes conduct that occurs "in the course of attempting to avoid detection or responsibility for that offense."

his fellow officers' safety, believing Ramirez-Ramirez was about to shoot at those executing the warrant. ROA.1390. The district court, having viewed the evidence at trial, was well aware of the testimony, which "was subject to cross examination at trial[,]" and the videos of the shooting incident. *United States v. Torres*, 694 F. App'x 937, 942 (5th Cir. 2017) (unpublished) (internal citation omitted); *United States v. Salazar-Valencia*, 716 F. App'x 288, 292 (5th Cir. 2018) (noting the district court "observed the trial testimony of the witnesses and found them credible").

Ramirez-Ramriez "has not shown that the information the district court relied on is materially untrue." *See Torres*, 694 F. App'x at 942 (cleaned up). It "was plausible for the district court to credit" the officers' testimony about that incident. *United States v. Bonilla*, 670 F. App'x 875, 876 (5th Cir. 2016) (unpublished). Thus, the district court's application of the sentencing enhancement "based on its own evaluation of the witnesses' credibility at trial…[was] plausible in light of the record as a whole." *Salazar-Valencia*, 716 F. App'x at 292 (cleaned up); *United States v. Dennis*, 41 F.4th 732, 744 (5th Cir. 2022) (affirming the application of § 2D1.1(b)(2) where an "agent entering Dennis's home saw the barrel of an assault rifle protrude around a corner, withdraw, and emerge again"

and "agents found an AR-15 rifle and an AK-47-type pistol with a drum of magazine boxes" near the entry).

Ramirez-Ramirez argues the district court erred in applying the enhancement by relying on acquitted conduct, in that he was acquitted of assault of a federal agent with a firearm. Appellant's Br., p. 22-25. As Probation noted, however, Ramirez-Ramirez was convicted for unlawful possession of a firearm as an alien because, at the time of his arrest for the conspiracy, he "possessed a 9mm handgun[,]…made a credible threat to use violence to law enforcement[,] and brandished a firearm." ROA.2023 (PSR ¶ 21), ROA.2035. And there was a connection between Ramirez-Ramirez's drug trafficking activity and his firearm possession, as it was possessed in his home where he kept "a total of $56,370 in United States currency." ROA.2023 (PSR ¶ 21). That money "is alleged to be drug proceeds." ROA.2023 (PSR ¶ 21). Fundamentally, acquitted conduct can be considered when it "establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c). Therefore, the district court correctly considered those facts in determining Ramirez-Ramirez's total offense level.

## <u>CONCLUSION</u>

This Court should affirm the judgment in all respects.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

*<u>s/ Kristian D. Amundsen</u>*
Kristian D. Amundsen
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9102

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I, Assistant United States Attorney Kristian D. Amundsen, hereby certify that on December 19, 2025, an electronic copy of the Appellee's Brief was served by notice of electronic filing via this court's CM/ECF system upon opposing counsel, Federico Andino Reynal.

Upon notification that the electronically-filed brief has been accepted as sufficient, and upon the Clerk's request, seven paper copies of this brief will be placed in the United States Mail, postage prepaid, addressed to the Clerk. *See* 5th Cir. R. 25.2.1, 31.1; 5th Cir. ECF filing standard E(1).

*s/ Kristian D. Amundsen*
Kristian D. Amundsen
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,401 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R.25.2.1, because it is an exact copy of the paper document.

5. This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security scanning program and is free of viruses.

*s/ Kristian D. Amundsen*
Kristian D. Amundsen
Assistant United States Attorney
Date: December 19, 2025